UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY,

          Plaintiff,

  -vs-                              Case No:
                                    Hon:

GLOBAL MEDICAL BILLING, INC.
FIRST GLOBAL MEDICAL SUPPLY,        **JURY DEMANDED**
SALMA ALI SHEIKH,
GET WELL MEDICAL TRANSPORTATION COMPANY,
HALA MAKKI,
PROGRESSIVE PHYSICAL THERAPY AND REHAB CENTER, INC.,
TRI-COUNTY PHYSICAL THERAPY AND REHABILITATION, INC.,
REHAB SPECIALISTS GROUP, INC., AN ASSUMED NAME OF
       PROGRESSIVE PHYSICAL THERAPY AND REHAB CENTER, INC.
       AND AN ASSUMED NAME OF TRI-COUNTY PHYSICAL THERAPY
       AND REHABILITATION, INC.
TAHZIBUL H. RIZVI aka T.H. RIZVI,
MEDICAL EVALUATIONS AND TESTING, PC,
TERRY REZNICK, DO,
MEDICAL EVALUATIONS, PC,
JAMES E. BEALE, JR., MD,
SUNCARE REHAB, INC.,
SUNDRARAM S. PILLAI,
REHAB ASSOCIATES, INC.,
VINOD JOSHI,
AMANDA BAZZI aka AMALE MAKKI BAZZE,
ANDREA PENNINGTON, MD,
FAYE CHEHAB AKA FATEMAH CHEHAB,
IRWIN LUTWIN, DO,
JEFFREY PARKER, MD,
SEAN MURDOCK,
SUKAINA MACKIE aka SUE MAKKI,

          Defendants.
_____/
KAREN W. MAGDICH (P62746)
MAGDICH & ASSOCIATES, PC
Attorneys for the Plaintiff
21600 Novi Rd, Suite 700
Novi, MI 48375
(248) 344-0013
_____/

There is no prior lawsuit pending between these parties arising out of the same
transaction or occurrence.

## COMPLAINT

COMES NOW PLAINTIFF, **ALLSTATE INSURANCE COMPANY**, by and through its attorneys, **MAGDICH & ASSOCIATES, PC**, and for its Complaint states as follows:

1.      Plaintiff Allstate Insurance Company (hereinafter referred to as "Plaintiff") is an Illinois Corporation.

2.      Plaintiff is a provider of insurance, including Michigan Automobile No-Fault Insurance.

3.      Global Medical Billing, Inc. (hereinafter referred to as "Global Medical") is a Michigan Corporation conducting its business in the State of Michigan.

4.      Salma Ali Sheikh (hereinafter referred to as "Salma Sheikh") is a resident of or has a place of business in or conducts business in the State of Michigan.

5.      Get Well Medical Transportation Company (hereinafter referred to as "Get Well") is a Michigan Corporation conducting its business in the State of Michigan.

6.      Hala Makki is a resident of or has a place of business in or conducts business in the State of Michigan.

7.      Amanda Bazzi aka "Amale Makki Bazze" (hereinafter referred to as "Amanda Bazzi") is a resident of or has a place of business in or conducts business in the State of Michigan.

8.      Progressive Physical Therapy and Rehab Center, Inc. (hereinafter referred to as "Progressive") is a Michigan Corporation conducting its business in the State of Michigan.

9.     T.H. Rizvi is a resident of or has a place of business in or conducts business in the State of Michigan.

10.     Sukaina Mackie aka "Sue Makki" (hereinafter referred to as "Sue Mackie") is a resident of or has a place of business in or conducts business in the State of Michigan.

11.     Irwin Lutwin, DO is a resident of or has a place of business in or conducts business in the State of Michigan.

12.     Andrea Pennington, MD, is a resident of or has a place of business in or conducts business in the State of Michigan.

13.     Sean Murdock is a resident of the State of Michigan.

14.     Medical Evaluation and Testing, PC (hereinafter referred to as "MET") is a Michigan Corporation conducting its business in the State of Michigan.

15.     Medical Evaluations, PC (hereinafter referred to as "Medical Evaluations") is a Michigan Corporation conducting its business in the State of Michigan.

16.     Terry Reznick, DO is a resident of or has a place of business in or conducts business in the State of Michigan.

17.     Fatemah Chehab aka "Faye Chehab" (hereinafter referred to as "Faye Chehab") is a resident of or has a place of business in or conducts business in the State of Michigan.

18.     Jeffrey Parker, MD is a resident of or has a place of business in or conducts business in the State of Michigan.

19.     James Beale, Jr., MD is a resident of or has a place of business in or conducts business in the State of Michigan.

MAGDICH & ASSOCIATES, PC

20.     SunCare Rehab Inc. (hereinafter referred to as "SunCare") is a Michigan Corporation conducting its business in the State of Michigan.

21.     Sundraram S. Pillai is a resident of or has a place of business in or conducts business in the State of Michigan.

22.     Rehab Associates, Inc. (hereinafter referred to as "Rehab Associates") is a Michigan Corporation conducting its business in the State of Michigan.

23.     Vinod Joshi is a resident of or has a place of business in or conducts business in the State of Michigan.

24.     First Global Medical Supply Corporation (hereinafter referred to as "First Global") is a dissolved corporation and Michigan Business conducting business in the State of Michigan.

25.     Tri-County Physical Therapy and Rehabilitation, Inc. (hereinafter referred to as "Tri-County") is a Michigan Business conducting business in the State of Michigan.

26.     Rehab Specialists Group, Inc. is a Michigan Business conducting business in the State of Michigan, and an assumed name of both Progressive Physical Therapy and Rehab Center, Inc. and Tri County Physical Therapy and Rehabilitation, Inc., which are two separate Michigan Businesses conducting business in the State of Michigan.

## JURISDICTION AND VENUE

27.     Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1-26 as though fully set forth at length herein.

28.     Pursuant to 28 USC 1332(a)(1), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

29.     Pursuant to 28 USC 1331 this Court also has jurisdiction over the claims brought under 18 USC 1961 *et seq* (hereinafter "RICO") because they arise under the laws of the United States.

30.     This Court also has jurisdiction over the state law claims because they are so related to the RICO claims as to form part of the same case and controversy.

31.     Pursuant to 28 USC 1391(b) venue is proper in this district because a substantial part of the events or omissions giving rise to the claims occurred here.

32.     The damages in this matter exceed the jurisdictional limit of $75,000.00.

**COMMON ALLEGATIONS**
**MEDICAL PROVIDERS**

33.     Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1-32 as though fully set forth at length herein.

34.     Salma Sheikh is an officer, shareholder, director or owner of Global Medical.

35.     Hala Makki is an officer, shareholder, director or owner of Get Well.

36.     Amanda Bazzi is an officer, shareholder, director or owner of MET.

37.     T.H. Rizvi is an officer, shareholder, director or owner of Progressive.

38.     Sue Mackie is an officer, shareholder, director, agent, employee or owner of Progressive.

39.     McNichols Clinic is an expired assumed name for McNichols X-Ray Clinic, PC, which is still a valid entity.

40.     Irwin Lutwin, DO is an agent and/or employee of the McNichols Clinic, MET, and Medical Evaluations.

MAGDICH & ASSOCIATES, PC

41.     Andrea Pennington, MD is an agent and/or employee of the McNichols Clinic, MET, and Medical Evaluations.

42.     Dr. Jeffrey Parker is an officer, shareholder, director or owner of MET.

43.     Dr. Jeffrey Parker was an employee and/or agent of MET and took direction from lay people in making medical decisions.

44.     Dr. James E. Beale, Jr., MD is an officer, shareholder, director or owner of MET and Medical Evaluations.

45.     Dr. James E. Beale, Jr., MD is colluding with the solicitors to operate MET and Medical Evaluations.

46.     Medical Evaluations is operating at the same location as MET.

47.     Dr. Terry Reznick, DO is an officer, shareholder, director or owner of MET.

48.     Dr. Terry Reznick, DO knowingly and willfully executed documents to incorporate MET at the direction of lay people who intended to and in fact profited from his medical license.

49.     Dr. Terry Reznick, DO was an employee and/or agent of MET and took direction from lay people in making medical decisions and providing medical care.

50.     Sundraram S. Pillai is an officer, shareholder, director or owner of SunCare.

51.     Vinod Joshi is an officer, shareholder, director or owner of Rehab Associates.

52.     Salma Sheikh is an officer, shareholder, director or owner of First Global.

53.      At all times relevant to these proceedings and the claim for damages, Amanda Bazzi was an owner of the medical clinic located in Suite 111 of 15800

McNichols, Detroit, Michigan (hereinafter and previously referred to as "McNichols Clinic").

54.    T.H. Rizvi was a owner of the McNichols Clinic at all times relevant to these proceedings.

55.    Global Medical performs the billing service for the McNichols Clinic.

56.     Global Medical performs the billing service for Get Well.

57.    Global Medical performs the billing service for Progressive.

58.    Global Medical performs the billing service for Irwin Lutwin, DO.

59.    Global Medical performs the billing service for MET.

60.    Global Medical performs the billing service for Medical Evaluations.

61.    Global Medical performs the billing service for Rehab Associates.

62.    Global Medical performs the billing services for First Global.

63.    MET was operated by lay people who had full control of all finances and assets of MET.

64.    The corporate structure of MET is a sham corporation.

65.    Medical Evaluations operated by lay people who had full control of finances and assets of MET.

66.    The corporate structure of Medical Evaluations is a sham corporation.

67.    The unlicensed de-facto owners of MET and Medical Evaluations entered into agreements with licensed individuals, who held licenses pursuant to MCDL 450.222(a), to provide professional services at MET and Medical Evaluations to insureds of Allstate and Claimants under the Assigned Claims Plan.

68.    The true owners of MET entered into an agreement with Terry Reznick, DO to execute documents for the State of Michigan to hide the true operators and controllers of the clinic.

69.    On the face of papers filed with the State of Michigan, Dr. Terry Reznick, DO appears to be the owner of MET.

70.    At some point in early 2009, Dr. James E. Beale, Jr., MD took over as the alleged owner of a new corporate entity, Medical Evaluations, which is operated at the same location as MET, although the same lay person owners continued to control the medical facility through a different corporate sham.

71.    The Medical Provider Defendants attested to the medical necessity of the services, as well as the validity of the charges, and they were obligated legally and ethically to act honestly and with integrity.

72.    Plaintiff is under statutory and contractual obligations to promptly and fairly process claims within thirty (30) days.

73.    The facially valid documents submitted to Allstate in support of the fraudulent charges at issue, combined with the material misrepresentations described above, were designed to and did cause Plaintiff to justifiably rely on them; as a result, Allstate has incurred damages of more than $680,000.00 based upon the fraudulent charges.

74.    Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud from Plaintiff, Plaintiff did not discover and should not have reasonably discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

## NO FAULT RESPONSIBILITIES

75.    Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1-74 as though fully set forth at length herein.

76.    Under the Michigan No-Fault Act, insurers are required to pay personal protection insurance benefits including "all liable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured persons care, recovery or rehabilitation" when those benefits are causally connected to an "accidental bodily injury arising out the ownership, operation, maintenance, or use of a motor vehicle" (hereinafter "No-Fault benefits"). *See* MCL paragraphs 500.3105, 500.3107 (1)(a).

77.    Insureds of Plaintiff and Claimants under the Michigan Assigned Claims Plan (hereinafter referred to as "ACP") can assign their rights to No-Fault benefits to providers of medical services; pursuant to such assignments, providers may submit claims directly to insurance companies including Allstate and receive No-Fault benefits for these services.

78.    Allstate provides claim handling duties on behalf of the ACP of the State of Michigan.

79.    Pursuant to MCL 500.3157, Plaintiff had no obligation to pay in circumstances in which a physician, hospital, clinic or other person was not lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance.

## SOLICITORS

80.    Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1-79 as though fully set forth at length herein.

81.     Hala Makki, personally or through an agent, obtains police reports of motor vehicle accidents that have occurred in Metro-Detroit.

82.     Hala Makki, personally or through an agent, solicits clients through use of the police reports for the billing scheme.

83.     Hala Makki, personally or through an agent, contacts persons who have been involved in motor vehicle accidents and offers them services through the Medical Provider Defendants.

84.     Amanda Bazzi, personally or through an agent, obtains police reports of motor vehicle accidents that have occurred in Metro-Detroit.

85.     Amanda Bazzi, personally or through an agent, solicits clients through use of the police reports for the billing scheme.

86.     Amanda Bazzi, personally or through an agent, contacts persons who have been involved in motor vehicle accidents and offers them services through the Medical Provider Defendants.

87.     Salma Sheikh, personally or through an agent, obtains police reports of motor vehicle accidents that have occurred in Metro-Detroit.

88.     Salma Sheikh, personally or through an agent, solicits clients through use of the police reports for the billing scheme.

89.     Salma Sheikh, personally or through an agent, contacts persons who have been involved in motor vehicle accidents and offers them services through the Medical Provider Defendants.

90.     Faye Chehab, personally or through an agent, obtains police reports of motor vehicle accidents that have occurred in Metro-Detroit.

MAGDICH & ASSOCIATES, PC

91.    Faye Chehab, personally or through an agent, solicits clients through use of the police reports for the billing scheme.

92.    Faye Chehab, personally or through an agent, contacts persons who have been involved in motor vehicle accidents and offers them services through the Medical Provider Defendants.

## BILLING SCHEME

93.    Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1-92 as though fully set forth at length herein.

94.    Global Medical is the company that is performing the billing services for the Medical Provider Defendants.

95.    Global Medical is paid a percentage of the recoveries and/or billings by the Medical Provider Defendants.

96.     Get Well provided the transportation of the patients to the Medical Provider Defendants.

97.    Get Well Medical Transportation entered into agreements with one or more of the Medical Provider Defendants to transport patients solicited by the Solicitor Defendants to the Medical Provider Defendants.

98.    The Medical Provider Defendants entered into agreements with the Solicitor Defendants to provide compensation for their services in providing patients to the Medical Provider Defendants.

99.    The Medical Provider Defendants employed or contracted with individuals to solicit patients for the Medical Provider Defendants and further arranged for the transportation of the patients/claimants through Get Well to the Medical Provider Defendants and/or their place of business.

100.   The Solicitor Defendants directed or otherwise caused the licensed professionals, medical doctors and osteopathic doctors, with whom they had entered into agreements with, to refer patients to other licensed professionals whom they had entered into similar agreements with.

101.   The Solicitor Defendants coerced, enticed or otherwise bribed the licensed medical professionals to incorporate the clinics known as MET and Medical Evaluations; the physicians, Defendants Dr. James E. Beale, Jr., MD and Dr. Terry Reznick, DO did not have control of or signing authority on bank accounts where monies from the clinics were deposited.

102.   The Solicitor Defendants directed the Medical Provider Defendants to upcode charges for services.

103.   The medical professionals did in fact upcode their services in an effort to obtain a higher payment and profit.

104.   For illustration, at Medical Evaluations, a patient who had been a patient of the clinic for over eight months was billed for a "Complex New Patient" charge eight months into his ongoing services at Medical Evaluations.

105.   By way of further illustration, on January 22, 2009, MET billed Plaintiff under code 99214 when the patient had been a patient of the clinic for over six months, no detailed history was taken from the patient, a detailed examination was not conducted, and no complex medical decision of any complexity was performed; in fact, the evaluation sheet for the patient is blank with the exception of the continued recommendation of physical therapy.

MAGDICH & ASSOCIATES, PC

106.    The medical doctors and osteopathic physicians wrote prescriptions for unnecessary services, including physical therapy, transportation services, MRIs and EMG testing.

107.    The Medical Provider Defendants directed the patients to receive therapy services and further testing at clinics owned and/or operated by the Solicitor Defendants.

108.    The Medical Provider Defendants directed the patients to receive therapy services and further testing at clinics where other medical providers, including the Solicitor Defendants, would benefit financially.

109.    The Medical Provider Defendants submitted bills for professional services for payment by Allstate, representing that the services had been for treatment of bodily injury sustained in motor vehicle accidents by Allstate insureds and ACP claimants.

110.    The Medical Provider Defendants failed to reveal to Plaintiff that the providers had entered into agreements with the Solicitor Defendants to attract patients.

111.    The Medical Provider Defendants failed to reveal that the medical care at MET was being directed by lay people.

112.    The Medical Provider Defendants failed to reveal that the medical care at Medical Evaluations was being directed by lay people.

113.    The Medical Provider Defendants failed to reveal that unlicensed persons were profiting from the professional licenses of the doctors employed by and working at MET and Medical Evaluations.

114.    The Medical Provider Defendants failed to reveal to Plaintiff that they directed or otherwise caused patients to be referred to other facilities for services owned and operated by the Solicitor Defendants and Medical Provider Defendants.

MAGDICH & ASSOCIATES, PC

115.   T.H. Rizvi, Sue Mackie and Progressive engaged in a concerted plan of action with Sean Murdock whereby Mr. Murdock would work at the McNichols Clinic and direct patients to Progressive.

116.   T.H. Rizvi, Sue Makki and Progressive conspired to send patients to the McNichols Clinic to obtain prescriptions for services to be performed at Progressive; Sean Murdock, Dr. Irwin Lutwin, DO, Dr. Andrea Pennington, MD and Amanda Bazzi engaged in the scheme to prepare the prescriptions.

117.   Sean Murdock, Dr. Irwin Lutwin, DO, Dr. Andrea Pennington, MD and Amanda Bazzi engaged in the scheme to prepare the prescriptions for transportation services at the request of Hala Makki and Get Well.

118.   Hala Makki, Salma Sheikh, Faye Chehab and Amanda Bazzi, jointly, knowingly and willfully conspired to obtain medical prescriptions for transportation services.

119.   The Medical Provider Defendants failed to reveal that they were profiting from, and retained control over, money received in payment for those services solicited and controlled by the Solicitor Defendants.

120.   The Medical Provider Defendants failed to reveal that Global Medical was responsible for matching the transportation service to the medical or physical therapy service dates and altered records to match dates of service.

121.   The owners and operators of MET and Medical Evaluations failed to reveal to Plaintiff that the money received for services did not pass through to the licensed physicians in whose names and/or on whose behalf billings were made.

122.   Salma Sheikh and Global Medical created false medical records to justify billing for services that were not rendered.

123.   Salma Sheikh and Global Medical created false transportation records to justify billing for services that were not rendered.

124.   To illustrate, on March 26, 2008, Hala Makki contacted an ACP Claimant whose claim was being handled by Allstate; Ms. Makki recommended an attorney, transportation, medical services and physical therapy services; thereafter, Get Well, Progressive, Bio Magnetic Resonance, and MET and/or Medical Evaluations began billing for services through Global Medical.

125.    To further illustrate, the doctors working at the McNichols Clinic, MET and Medical Evaluations routinely ordered physical therapy, MRI testing, EMG studies and transportation services without regard to the physical complaints or injury.

126.   An example includes a Claimant who after her September 17, 2008 accident, was contacted by "Hala", thereafter Hala arranged her transportation and doctors visits; the Claimant was taken to the McNichols Clinic, Dr. Terry Reznick, DO at MET, and then to Rehab Associates.  The therapy clinic was flexible in scheduling and allowed Get Well to determine when the Claimant would receive therapy; in fact, Get Well would often change the appointments from the morning to the afternoon on the day of the appointment.

127.   Patients with a diagnosis of a sprain or strain only would be sent to physical therapy for months to years at a time.

128.   Patients with a diagnosis of a sprain or strain only would be sent for MRI studies at Bio Magnetic Resonance Imaging.

129.   Patients with a diagnosis of a sprain or strain only would be sent for EMG studies to be conducted at MET and/or Medical Evaluations by a doctor that they

MAGDICH & ASSOCIATES, PC

retained and paid; MET and/or Medical Evaluations billed for the EMG, it was not billed by the licensed doctor who performed the examination.

130.   The Physician Defendants would fail to review the physical therapy records and fail to review and approve the treatment plans for the passive modality services that were conducted at Suncare, Rehab Associates and Progressive.

131.   To illustrate, on November 13, 2008, Dr. Jeffrey Parker, MD diagnosed an ACP Claimant, whose claim was adjusted by Allstate, with a lumbar strain; the patient did not complain of radicular symptoms.  Though this was a soft tissue injury only with the only symptom being "pain", Dr. Jeffrey Parker ordered physical therapy, which continued for over fourteen (14) months; Dr. Jeffrey Parker also ordered EMG studies of both lower extremities at MET and/or Medical Evaluations and also sent the patient to Bio-Magnetic Resonance for an MRI.  The Claimant has been transported to every visit for physical therapy at Rehab Associates, testing and medical services by Get Well.

132.   This pre-determined protocol is done solely to maximize the charges to Plaintiff, the ACP and other insurers.

## DAMAGES

133.   Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1-132 as though fully set forth at length herein.

134.   The Defendants submitted bills to Plaintiff for payment purportedly pursuant to provisions of the Michigan No Fault Act, MCL 500.3101 *et seq*.

135.   Plaintiff has been injured in its business and property by reason of Defendants' conduct.

136.    To date, within the last six years, the Defendants, individually and/or through their corporations, have wrongfully collected in excess of $680,000 from Plaintiff.

137.    Pursuant to 1964(c), Plaintiff is entitled to treble damages for the RICO violations, jointly and severally, from the Defendants.

138.    Pursuant to MCL 500.3148, Plaintiff is entitled to attorneys fees for having to pursue the Defendants for their fraudulent activities.

**COUNT I
INSURANCE FRAUD**

139.    Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1 through 138 of this Complaint as if more specifically set forth herein word for word and paragraph by paragraph.

140.    Defendants, jointly and severally, presented, caused to be presented, or aided, assisted and abetted, solicited or conspired with one another to present, or cause to be presented to Plaintiff, in connection with claims for payment pursuant to insurance policies issued and in effect pursuant to the No Fault Act, MCL 500.3101 *et seq*, false information, both affirmatively and by failing to disclose what they had a duty to disclose.

141.    Defendants, jointly and severally, presented, caused to be presented, or aided, assisted and abetted, solicited or conspired with one another to present, or cause to be presented to Plaintiff in connection with claims for payment pursuant to the No Fault Act, MCL 500.3101 *et seq*, particularly claims to be paid by the ACP, false information, both affirmatively and by failing to disclose what they had a duty to disclose.

142.    Defendants' conduct violated MCL 500.4501.

143.    As a result of the Defendants' conduct, Plaintiff suffered financial harm.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment for Plaintiff and against Defendants in an amount in excess of $75,000.00 that is sufficient to compensate Plaintiff for their actual, consequential, incidental losses sustained as a result of Defendants' insurance fraud together with costs, interest and attorneys fees and that this court grant such other and further relief the court deems just and proper under the circumstances.

## COUNT II
## CIVIL CONSPIRACY

144.    Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1 through 143 of this Complaint as if more specifically set forth herein word for word and paragraph by paragraph.

145.    The individual Defendants, jointly and severally, engaged in concerted action to accomplish the unlawful purpose of obtaining from Plaintiff payment of money to which they were not legally entitled, and which Plaintiff had no legal obligation to pay, by agreeing to and in fact doing, the following:

   a. Organizing corporations under the auspices of the laws of the State of Michigan;
   b. Obtaining and using Tax Identification Numbers for the corporations;
   c. Hiring or otherwise engaging licensed professionals to perform professional services at clinics owned by lay people;
   d. For those that hold professional licensure, agreeing to take direction from and to utilize their professional licensure to profit lay people;
   e. Soliciting patients for the medical service providers, including the Plaintiff's insureds;

MAGDICH & ASSOCIATES, PC

f. Soliciting patients for the medical service providers, including the residents of the State of Michigan entitled to benefits under the ACP;

g. Directing the licensed professionals to refer the patients that they had solicited, and other patients, all Plaintiff's insureds and Claimants under the ACP, to other licensed professionals with whom the solicitors had entered into the scheme of sharing and referring patients for unnecessary services and testing;

h. Maintaining bank accounts in the names of the corporations in order to retain control over money received in payment from Plaintiff;

i. Billing for services that were not rendered;

j. Upcoding charges;

k. Submitting bills for payment to Plaintiff under the Tax Identification Number of the corporations;

l. Obtaining profits from licensures which are not held by the solicitors;

m. Failing to disclose to Defendant that lay people were directing the medical care and services;

n. Failing to disclose any of the above to Plaintiff with the submission of the bills or at any other time.

146.   The individual Defendants agreed among themselves to conduct business in the matter set forth herein.

147.   The undertakings by the individual Defendants were done according to a preconceived design and pursuant to agreement made between the individual Defendants in which certain of the Defendants informed other Defendants of the practices and procedures to be followed and sent patients to other Defendants in exchange for which the certain Defendants received payment and compensation.

148.   The Defendants made these false and fraudulent statements to induce Plaintiff to pay charges for the services and testing that were not compensable under the Michigan No Fault Act.

149.   The individual Defendants profited from their actions.

150.   Plaintiff justifiably relied on the Defendants' false and fraudulent representations, and as a proximate result has received injury.

151.   As a result of the conduct of the individual Defendants in making the agreements and acting pursuant to those agreements as set for the above, Plaintiff has suffered damages that the individual Defendants are obligated to pay, in the total amount of No Fault benefits they received, in excess of $680,000.00, directly or indirectly through agreement with their co-conspirators, from Plaintiff.

152.   The Defendants' excessive fraudulent conduct entitles Plaintiff to recover exemplary damages.

153.   Accordingly by virtue of the foregoing, Plaintiff is entitled to compensatory and exemplary damages, together with interest and costs, and any other relief the Court deems just and proper under the circumstances.

**WHEREFORE,** Plaintiff respectfully requests this Court enter judgment for Plaintiff and against Defendants, jointly and severally, in an amount in excess of $75,000.00 that is sufficient to compensate Plaintiff for their actual, consequential, incidental losses sustained as a result of Defendants' civil conspiracy together with costs, interest and attorneys fees and that this court grant such other and further relief the court deems just and proper under the circumstances.

## COUNT III
## RICO CIVIL CONSPIRACY

154.   Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1through 153 of this Complaint as if more specifically set forth herein word for word and paragraph by paragraph.

155.   The Defendants have engaged in a widespread enterprise scheme to commit insurance fraud and have engaged in a pattern of racketeering activity across

state lines and a conspiracy to engage in racketeering activity involving numerous RICO predicate acts during the past ten (10) calendar years.

156.    The acts alleged here cluster around insurance fraud, including but not limited to solicitation of No Fault insurance beneficiaries, representing that services were for treatment of bodily injury sustained in motor vehicle accidents, billing for services that have not been performed, prescribing and/or ordering unnecessary services, treatment and testing all in an effort to financially gain and induce insurance companies, including Plaintiff, to pay for these services.

157.    The Defendants are an association-in-fact "Enterprise" as the term is defined in 18 USC 1961(4).

158.    The Enterprise engages in and the activities of the enterprise affect interstate commerce.

159.    The Defendants, through their Enterprise, utilized the US Mail system to submit fraudulent bills to Plaintiff.

160.    The Defendant members of the Enterprise are and have been associated through time, joined in a purpose and organized in a manner amenable to hierarchal and consensual decision making, with each member fulfilling a specific and necessary role to carry out and facilitate its common purpose.

161.    Specifically, the Solicitor Defendants, individually or through hired agents, solicited patients by use of emergency room medical records and/or police reports to identify persons who have been involved in motor vehicle accidents.  The Defendants particularly target persons who could be and are eligible for ACP benefits. The Solicitor Defendants target and contact the persons identified on the police reports and hospital records.  Thereafter, Get Well provides transportation services to the patients, prior to

MAGDICH & ASSOCIATES, PC

any physician order.  Get Well transports the patients to a physical therapy clinic or medical clinic, to initiate the billing scheme.  To support the transportation and therapy services, the Defendant Physicians, who are directed by lay people, execute prescriptions for unnecessary services and testing solely for the reason of increasing the charges to Plaintiff.  Although the Defendant Corporations have a façade of being independent entities with different names, addresses and tax identification numbers, they are not; Defendants have used these entities to accomplish their common purpose of increasing insurance billings and fraudulent billing for insurance compensable services, specifically submitting fraudulent charges to Allstate on behalf of the ACP that were either not necessary, upcoded or were not performed at all.

162.   The Defendants have knowingly conducted and/or participated, directly or indirectly, in the conduct of the billing scheme through this enterprise through a pattern of racketeering activities consisting of repeated violations of the federal mail fraud statute, 19 U.S.C 1341, based upon the use of the United States mails to submit to Plaintiff the fraudulent bills for services and testing that was not performed, upcoded or not medically necessary.

163.   Each Defendant knew of, agreed to and acted in furtherance of the common and overall objective of the conspiracy by facilitating the submission to Plaintiff of the fraudulent bills for services that were for services and testing that was not performed, upcoded or not medically necessary.

164.   Plaintiff has been injured in its business and property by reason of Defendants' above described conduct in that it has paid more than $680,000.00 based upon the fraudulent charges.

MAGDICH & ASSOCIATES, PC

165.    By reason of this injury, Allstate is entitled to treble damages, costs and reasonable attorneys fees pursuant to 18 USC 1964(c) and any other relief the Court deems just and proper under the circumstances.

**WHEREFORE,** Plaintiff respectfully requests this Court enter judgment for Plaintiff and against Defendants in an amount in excess of $75,000.00 that is sufficient to compensate Plaintiff for their actual, consequential, incidental losses sustained as a result of the payment made under conspiracy under RICO together with treble damages with costs, interest and attorneys fees and that this court grant such other and further relief the court deems just and proper under the circumstances.

**COUNT IV**
**PAYMENT UNDER MISTAKE OF FACT**

166.    Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1 through 165 of this Complaint as if more specifically set forth herein word for word and paragraph by paragraph.

167.    Plaintiff paid to the Defendants the amounts set forth above under a misunderstanding, misapprehension, error, fault or ignorance of material facts, as set forth above.

168.    Plaintiff has sustained damages as set forth in paragraphs 133 through 138.

169.    That Defendants, jointly and severally, would be unjustly enriched if allowed to retain the payments made to them by Plaintiff under a mistake of fact.

170.    That Plaintiff is entitled to restitution from Defendants, jointly and severally, for all monies paid to them as set forth herein.

MAGDICH & ASSOCIATES, PC

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment for Plaintiff and against Defendants in an amount in excess of $75,000.00 that is sufficient to compensate Plaintiff for their actual, consequential, incidental losses sustained as a result of the payment made under mistake of fact together with costs, interest and attorneys fees and that this court grant such other and further relief the court deems just and proper under the circumstances.

**COUNT V**
**SILENT FRAUD**

171.    Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1 through 170 of this Complaint as if more specifically set forth herein word for word and paragraph by paragraph.

172.    Defendants had a duty to disclose to Plaintiff their lack of professional licensure, the arrangement whereby they entered into agreements with licensed professionals to render services to patients at clinics owned and operated by lay people; solicited patients to those medical provider clinics; caused or otherwise directed the licensed professionals to refer patients to other licensed professionals whom Defendants has solicited agreements with to profit; and retained control over the money received in payment by Plaintiff.

173.    That Defendants failed to disclose to Plaintiff the fact set forth in the preceding paragraph.

174.    That by failing to disclose to Plaintiff these facts, Defendants intended to induce action on the part of Plaintiff, i.e. payment of bills for services submitted pursuant to the Michigan No Fault Act, MCL 500.3101 *et seq*.

MAGDICH & ASSOCIATES, PC

175.    That Defendants failure to disclose these material facts and in fact induced reliance on the part of the Plaintiff, to wit, payment by Plaintiff to Defendants.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment for Plaintiff and against Defendants in an amount in excess of $75,000.00 that is sufficient to compensate Plaintiff for their actual, consequential, incidental losses sustained as a result of Defendants' silent fraud together with costs, interest and attorneys fees and that this court grant such other and further relief the court deems just and proper under the circumstances.

## COUNT VI
## UNJUST ENRICHMENT

176.    Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1 through 175 of this Complaint as if more specifically set forth herein word for word and paragraph by paragraph.

177.    Pursuant to the No-Fault Act, Plaintiff paid fees to the Defendants on behalf of Plaintiff's insureds and the ACP, to which Defendants were not entitled.

178.    Defendants wrongfully received financial benefit from Plaintiff.

179.    The services allegedly provided by Medical Providers Defendants were not lawfully rendered pursuant to MCL 500.3157.

180.    The services billed by the Defendant were fabricated by the Plaintiffs as part of scheme to profit from the Michigan No Fault System.

181.    Although demand for repayment has been made, Defendant has failed to return the funds in which it was not entitled to and payment to Allstate is due and owing.

MAGDICH & ASSOCIATES, PC

182.   Plaintiff has been injured in its business and property and it has wrongfully paid more than $680,000.00 based upon the fraudulent charges, to which Defendants were not entitled.

183.   Defendants have been unjustly enriched through Plaintiff's payments, on behalf of itself and the ACP, of fees that were improper under the No-Fault Act.

184.   By reason of the foregoing, Plaintiff is entitled to Judgment against Defendants for unjust enrichment.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment for Plaintiff and against Defendants in an amount in excess of $75,000.00 that is sufficient to compensate Plaintiff for their actual, consequential, incidental losses sustained as a result of Defendants' conspiracy together with costs, interest and attorneys fees and that this court grant such other and further relief the court deems just and proper under the circumstances.

## COUNT VII
## BAZZI, PENNINGTON, MURDOCK and RIZVI CONSPIRACY, FRAUD, MISREPRESENATION AND PRACTICING MEDICINE WITHOUT A LICENSE

185.   Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1 through 183 of this Complaint as if more specifically set forth herein word for word and paragraph by paragraph.

186.   Amanda Bazzi approached Dr. Andrea Pennington, MD and hired her to work at the McNichols Clinic.

187.   The McNichols Clinic, through Global Medical, took responsibility of billing for Dr. Andrea Pennington, MD's work at the clinic.

MAGDICH & ASSOCIATES, PC

188.   Amanda Bazzi paid Dr. Andrea Pennington, MD a retainer to start working at the McNichols Clinic.

189.   Sean Murdock acted as a receptionist and file clerk at the McNichols Clinic, although he was employed by Progressive.

190.   Mr. Murdock was employed by Progressive Therapy and paid by Progressive and T.H. Rizvi while he was working at the McNichols Clinic.

191.   Amanda Bazzi, Andrea Pennington, MD, Sean Murdock and T.H. Rizvi collaborated and created a scheme to increase the No Fault billings by the Medical Provider Defendants and allow the McNichols Clinic to see more patients by having Sean Murdock hold himself out as a physician and examine patients, leading to prescriptions for medical and transportation services for which the Defendants could bill Plaintiff.

192.   With Dr. Andrea Pennington, MD's permission, Sean Murdock was holding himself out to be a medical doctor, working at the McNichols Clinic.

193.   With Dr. Andrea Pennington, MD's permission, Sean Murdock told patients his name was "Dr. Pennington".

194.   After Sean Murdock would examine the patient, Dr. Andrea Pennington, MD would write a prescription for the patient.

195.   Dr. Andrea Pennington, MD did not perform an independent examination of the patient.

196.   Dr. Pennington relied upon Sean Murdock, an unlicensed lay person, to examine the patient.

197.   Sean Murdock did, in fact, perform examinations of patients at the McNichols Clinic.

198.   Without medical knowledge of the patient's condition, Dr. Andrea Pennington, MD wrote prescriptions on the advice of a lay person, Sean Murdock.

199.   Amanda Bazzi, Dr. Andrea Pennington, MD, T.H. Rizvi and Sean Murdock engaged in this conspiracy to increase medical billings to Plaintiff and the ACP.

200.   Amanda Bazzi, Dr. Andrea Pennington, MD, T.H. Rizvi and Sean Murdock intended Plaintiff to rely upon the representations that the patients were seen by a medical doctor and billed Plaintiff as if the patient had been examined by a medical doctor.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment for Plaintiff and against Defendants in an amount in excess of $75,000.00 that is sufficient to compensate Plaintiff for their actual, consequential, incidental losses sustained as a result of Defendants' conspiracy together with costs, interest and attorneys fees and that this court grant such other and further relief the court deems just and proper under the circumstances.

/s/ Karen S. Magdich
MAGDICH & ASSOCIATES, PC
KAREN W. MAGDICH
Attorney for Plaintiff
21600 Novi Road, Suite 700
Novi, Michigan 48375
P62746

Dated:   December 23, 2009